IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TONY VAN NGUYEN : CIVIL ACTION
:
v. :
:
ANDREW M. SAUL,[1] :
Commissioner of Social Security :
Administration : NO. 18-3802

**MEMORANDUM OF DECISION**

THOMAS J. RUETER
United States Magistrate Judge                               July 31, 2019

Plaintiff, Tony Van Nguyen, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").

Plaintiff filed a Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), defendant filed a Response to Plaintiff's Request for Review ("Def.'s Br."), and plaintiff filed a reply thereto ("Pl.'s Reply"). Additionally, defendant filed a Motion to Stay (Doc. 21) and plaintiff filed a Motion to Permit Withdrawal of Second Issue Presented (Doc. 22). For the reasons set forth below, the Motion to Permit Withdrawal of Second Issue Presented will be granted, the Motion to Stay will be denied as moot, and plaintiff's Request for Review will be granted.

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted as the defendant in this case.

I.      **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on March 23, 2015, alleging disability beginning February 15, 2011. (R. 228-34, 251-56.)[2] Plaintiff's claim was denied initially and he filed a timely request for a hearing. (R. 143-54, 165-71.) A hearing was held on February 13, 2017, before Administrative Law Judge ("ALJ") Jennifer Spector. (R. 107-42.) Plaintiff, represented by counsel, appeared and testified. Patricia Scott, a vocational expert ("VE"), also appeared and testified. In a decision dated May 3, 2017, the ALJ found that plaintiff was not disabled under the Act. (R. 89-106.) The ALJ made the following findings:

> 1.  The claimant last met the insured status requirements of the Social Security Act on March 31, 2015.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of February 15, 2011 through his date last insured of March 31, 2015 (20 CFR 404.1571 *et seq*.).
>
> 3.  Through the date last insured, the claimant had the following severe impairments: chronic pancreatitis secondary to alcoholism and paroxysmal arrhythmia (20 CFR 404.1520(c)).
>
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5.  After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he could have never climbed ladders, ropes, or scaffolds, occasionally climbed ramps and stairs, and occasionally balanced, stooped, kneeled, crouched,

---

[2]     Although the administrative record also contains an application for supplemental security income ("SSI") under Title XVI of the Act, see R. 235-50, at the administrative hearing, plaintiff's counsel confirmed that plaintiff would not pursue the claim for SSI, see R. 111. Additionally, the ALJ's decision addresses solely plaintiff's claim for DIB. Plaintiff's brief and reply brief are limited to his claim for DIB, as well. Therefore, the court will address only plaintiff's claim for DIB.

and/or crawled. The claimant must have avoided concentrated exposure to humidity and pulmonary irritants such as fumes, odors, dust, and gases.

6. Through the date last insured, the claimant was capable of performing past relevant work as an office clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 15, 2011, the alleged onset date, through March 31, 2015, the date last insured (20 C.F.R. 404.1520(f)).

(R. 94-101.)

Plaintiff filed a request for review of the decision of the ALJ that was denied and the ALJ's decision became the final decision of the Commissioner. (R. 1-6, 226-27.) Plaintiff then filed the present claim, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

In his request for review of the ALJ's decision, relying on Lucia v. S.E.C., 138 S. Ct. 2044 (2018), plaintiff contended that the ALJ did not exercise lawful authority when plaintiff's claim was denied because the ALJ was an inferior officer who was not properly appointed pursuant to the Appointments Clause of the United States Constitution. (Pl.'s Br. at 9-13.) See U.S. Const., Art. II, § 2, cl. 2 (Congress may vest appointment of "inferior Officers … in the President alone, in the Courts of Law, or in the Heads of Departments.").[3] In his response, defendant countered that plaintiff forfeited his Appointments Clause claim because he failed to assert this challenge during the administrative proceedings. (Def.'s Br. at 6-14.)

---

[3] In Lucia, the Supreme Court held that the Securities and Exchange Commission's ALJ was appointed in violation of the Appointments Clause because the ALJ was appointed by SEC staff members, not the SEC department head. 138 S. Ct. at 2055. The Court found that Lucia made a timely challenge to the constitutional validity of the ALJ's appointment and remanded for a hearing by either a properly appointed ALJ or the SEC itself. Id.

3

District courts in the Middle District of Pennsylvania issued two decisions on March 4, 2019, each finding that the plaintiffs in those cases had not waived their Appointments Clause challenges by failing to raise them during the administrative proceedings. See Cirko v. Berryhill, 2019 WL 1014195 (M.D. Pa. Mar. 4, 2019), appeal filed, No. 19-1772 (3d Cir. Apr. 10, 2019); Bizarre v. Berryhill, 364 F. Supp. 3d 418 (M.D. Pa. 2019), appeal filed, No. 19-1773 (3d Cir. Apr. 17, 2019). On April 5, 2019, defendant filed notices of appeal in those cases. On June 25, 2019, defendant filed a Motion to Stay (Doc. 21) in the present case, requesting that this case be stayed pending resolution by the Third Circuit of Cirko and Bizarre. Defendant averred that the pending appeals raise the same legal issue presented in this case with respect to the Appointments Clause challenge. See Mot. to Stay at ¶ 4.

In response, plaintiff filed a motion requesting permission to withdraw his Appointments Clause challenge. See Doc. 22. In the Motion to Permit Withdrawal of Second Issue Presented, plaintiff represents that defendant does not oppose his motion and that a stay would not be necessary if plaintiff's motion were granted. See id. at 1-2. As such, the undersigned will grant plaintiff's Motion to Permit Withdrawal of Second Issue Presented and will deny as moot defendant's Motion to Stay. Furthermore, the court will limit its discussion to the sole remaining issue presented in plaintiff's request for review.

## II. STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g)), cert. denied, 571 U.S. 1204 (2014); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence.  Jesurum v. Sec'y of U.S. Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995).  This court may not weigh evidence or substitute its conclusions for those of the fact-finder.  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  As the Third Circuit has stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings."  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment.  42 U.S.C. § 423(d)(5).

The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden.  20 C.F.R. § 404.1520.[4]  This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a

---

[4]     For purposes of this opinion, the court will refer to the version of the relevant regulation in effect at the time of the ALJ's decision on May 3, 2017.

5

severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. See id. The claimant bears the burden of establishing steps one through four of the five-step evaluation process, while the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other jobs existing in large numbers in the national economy. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

**III.    BACKGROUND**

At the time of the February 13, 2017, administrative hearing, plaintiff was fifty years old. (R. 113.) He lived with his wife and two children who were ages thirteen and nine. Id. Plaintiff was unemployed, although his wife maintained part-time employment. (R. 113, 115.) Plaintiff had a driver's license and was able to drive. (R. 113-14.) Plaintiff earned some college credit in the field of engineering, but did not obtain a degree. (R. 114.) Plaintiff's work history includes self-employment as a house painter, as well as employment as an office assistant in a law firm, as a cleaner for a temp agency, and as a chef. (R. 114-15.) Plaintiff had not worked since February 2011. (R. 115.)

With respect to his physical impairments, plaintiff confirmed that he experiences respiratory distress, including chest pain and discomfort and feels out of breath. Id. Plaintiff estimated that he can walk for two to three blocks before he must sit and catch his breath. (R. 116.) Such episodes cause plaintiff to feel tired; he confirmed that he also experiences a rapid heartbeat, tunnel vision, and ringing in his ears. (R. 116-17.) Plaintiff explained that he easily becomes overexerted. For example, he stated that he is unable to carry a load of laundry from the second floor to the basement and that he feels out of breath even if he has not overexerted

6

himself. (R. 117.) As a result of feeling fatigued, plaintiff typically naps twice daily, although he sleeps for eight hours per night. (R. 118.) Plaintiff has been prescribed an inhaler, which he carries with him, to assist with his breathing. (R. 119.) He has not been hospitalized for a breathing problem. Id. Plaintiff attributes his breathing difficulties to an irregular heartbeat. (R. 120.) According to plaintiff, when he has difficulty breathing, he puts pressure on his chest to alleviate the discomfort. Id. Plaintiff indicated that he has an arrythmia; he experiences this sensation twice per month. (R. 120-21.) He stated that it "probably . . . lasts . . . about half an hour." (R. 121.) During such an episode, plaintiff feels tightening and pain and must lay down. Id. Plaintiff stated that he has tried to use his son's nebulizer, but that such treatment does not ease his breathing difficulty. (R. 122.) Plaintiff has not been prescribed the use of a nebulizer. Id.

Plaintiff also indicated that he has high blood pressure which prevents him from engaging in activities that he used to enjoy, such as football, basketball, and bike riding. (R. 122-23.) Plaintiff represented that he used to be able to carry 50 to 100 pounds, but no longer is able to do so. (R. 123.)[5]

With respect to his daily activities, plaintiff testified that he becomes fatigued and out of breath after making his children's school lunch in the morning. (R. 126-27.) Plaintiff stated that he drives his child three blocks to school rather than walking to the school. (R. 127.) After returning home, plaintiff lays on the couch and watches television. (R. 127-28.) Plaintiff is able to read, but does not tend to read. (R. 129.) He is able to assist his children with

---

[5] Plaintiff's counsel posed a number of questions to plaintiff regarding his ability to carry a gallon of milk at various times during the course of an eight-hour workday. See R. 124-26. In response, plaintiff explained that he becomes out of breath and tired from overexertion. (R. 126.)

homework. Id. Although plaintiff drives his wife to the grocery store, he does not participate in grocery shopping. (R. 135.) With respect to personal care, plaintiff indicated that he sometimes becomes unsteady when showering. (R. 137.) When asked whether he anticipated a return to work, plaintiff stated that he would like to return to painting houses, but that he was advised by his doctor that he could not climb ladders due to his heart condition. (R. 133-34.) In addition, plaintiff noted that he used to be able to climb onto roofs, but no longer is able to do so. (R. 134.)[6]

The VE confirmed that she reviewed plaintiff's work record and listened to plaintiff's testimony regarding his work history. (R. 138.) She classified plaintiff's past work as a painter as medium, skilled work, and the office worker position as light, semi-skilled work. (R. 138-39.) The contractor work was performed at the medium exertional level, and the cleaner position was light, unskilled work. (R. 139.) The ALJ asked the VE to consider a hypothetical individual of plaintiff's age, education, and past work, who is limited to the light exertional level, and who can "occasionally perform all postural maneuvers except never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to humidity and pulmonary irritants like fumes, odors, dusts or gases." Id. The VE testified that such individual could perform the past work as an office clerk, but that the other past jobs would be precluded. (R. 139-40.) The VE further opined that the hypothetical individual could, however, perform the following light, unskilled jobs: "hand collator" (for which there are approximately 250,000 jobs nationally); "garment bagger" (for which there are approximately 210,000 jobs nationally); and "label coder" (for

---

[6] Plaintiff's counsel also questioned plaintiff about his drinking habits. See R. 129-32. Plaintiff stated that consuming alcohol does not affect his ability to work. (R. 132.) Plaintiff acknowledged that unemployment contributes to the stress in his life. (R. 133.) In addition, plaintiff acknowledged that while he experienced abdominal discomfort from pancreatitis in the past, he had not experienced such discomfort in the prior year. (R. 135-36.)

8

which there are approximately 180,000 jobs nationally). (R. 140.) The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Id.[7]

IV. **DISCUSSION**

The ALJ found that the evidence of record supports a finding that plaintiff has severe impairments but which do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 94-95.) Ultimately, the ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform light work as detailed in her decision. See R. 96. Plaintiff presently contends that substantial evidence does not support the ALJ's decision. Specifically, plaintiff argues that the ALJ failed to provide an appropriate analysis of the medical opinion evidence when considering plaintiff's RFC. (Pl.'s Br. at 3-9; Pl.'s Reply at 1-4.) Defendant maintains that substantial evidence supports the decision of the ALJ. (Def.'s Br. at 4-6.)

Pursuant to the Commissioner's regulations, RFC refers to the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a). The RFC assessment must be based upon all relevant evidence, including medical records, medical source opinions, and a claimant's description of his own symptoms. The relevant regulations dictate that an ALJ must give medical opinions the weight she deems appropriate based on factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. See 20 C.F.R. § 404.1527.[8] The final responsibility for determining a claimant's RFC is reserved

---

[7] Plaintiff's counsel also questioned the VE regarding the effect of absenteeism on the hypothetical individual's ability to work. See R. 140-41.

[8] The court notes that 20 C.F.R. § 404.1527, rather than 20 C.F.R. § 404.1520c, applies because plaintiff's claim was filed before March 27, 2017.

9

exclusively for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. § 404.1527(d).

When formulating plaintiff's RFC, the ALJ addressed the evidence of record pertaining to plaintiff's claims that he is unable to work due to various health issues. See R. 96-99. The ALJ analyzed, inter alia, plaintiff's testimony, the treatment records, the opinion of the consultative examiner, Hua Yang, M.D., and the opinion of the State agency medical consultant, Louis Bonita, M.D. Id. Plaintiff presently contends that Dr. Yang's opinion supports his claim of greater limitations than acknowledged by the ALJ. That is, plaintiff avers that the ALJ indicated that she attributed great weight to Dr. Yang's opinion, but failed to include the sitting and standing limitation stated therein and, most importantly, failed to explain why she did not include such limitation. See Pl.'s Br. at 3-9; Pl.'s Reply at 1-4.

On May 14, 2015, Dr. Yang conducted an internal medicine examination of plaintiff. (R. 1050-64.) With respect to plaintiff's ability to sit and stand, Dr. Yang indicated that plaintiff is able to sit for one hour at one time without interruption, stand for thirty minutes at one time without interruption, and walk for three blocks. (R. 1053.) However, Dr. Yang also opined that plaintiff is able to sit, stand, and walk for eight hours each in an eight-hour workday. Id.

In the RFC analysis, the ALJ expressly addressed Dr. Yang's opinion. The ALJ attributed "great weight" to the opinion, indicating that Dr. Yang "opined that the claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently, sit for one hour at a time, stand for 30 minutes at a time, walk for three blocks at [a] time, and sit, stand, and walk up to eight hours each in an[] eight-hour workday (7F pp. 5-6)." (R. 98.) The ALJ further noted Dr. Yang's opinion that plaintiff could never climb ladders or scaffolds, frequently climb stairs and

10

ramps, and frequently balance, stoop, kneel, crouch, and crawl. Id. In support of this assessment, the ALJ reasoned:

> Dr. Yang examined the claimant, and as a consultative examiner, has special program knowledge. While his opinion was offered after the claimant's date last insured, it is consistent with the medical evidence during the relevant period. The claimant's examinations have shown elevated blood pressure, normal gait, no joint deformity, negative straight leg raise, normal reflexes, no sensory deficit, and full strength in the upper and lower extremities (2F p.7; 7F pp. 14-15). He has complained of fatigue and shortness of breath (2F p.61). His cardiologist noted that the claimant was physically deconditioned (2F p.76). The claimant's deconditioning and subjective complaints support that he was limited to light work activity. His generally normal physical examinations support that he could have performed work activity throughout the relevant period. Therefore, I give this opinion great weight.

Id.

Plaintiff avers that Dr. Yang's opinion, which was given "great weight" by the ALJ and which was not expressly rejected by the ALJ in any way, necessarily contemplates plaintiff's need to alternate sitting and standing. Plaintiff correctly points out that the ALJ offered no explanation for Dr. Yang's seemingly inconsistent opinion that plaintiff is capable of sitting for one hour at a time, standing for thirty minutes at a time, walking for three blocks at a time, and yet also capable of sitting, standing, and walking up to eight hours each in an eight-hour workday. Plaintiff asserts that the ALJ's failure to address the sit/stand option is error because the need to alternate sitting and standing could have impacted the VE's testimony regarding plaintiff's ability to return to prior work and his ability to perform other work, and the RFC assessment which is based at least in part on the VE's testimony.

In support of his allegation of error, plaintiff directs the court's attention to Social Security Ruling ("SSR") 83-12, which provides guidance for adjudicators who must consider the extent of any erosion of the occupational base due to limitations in the RFC assessment. See SSR 83-12, Capability to do Other Work-The Medical-Vocational Rules as a Framework for

Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work, 1983 WL 31253, at *1 (S.S.A. 1983). This Ruling explains that where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource, which often includes testimony by a VE. Id. at *2. SSR 83-12 also specifically addresses the need to alternate sitting and standing. It provides:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.

Id. at *4.[9] Thus, the need to alternate sitting or standing is relevant to plaintiff's claim because it could have affected the VE's testimony regarding plaintiff's ability to return to his prior work, or

---

[9] The need to alternate sitting and standing can also affect an RFC assessment for individuals limited to a sedentary exertional level. SSR 96-9p explains the Social Security Administration's policies regarding the impact of an RFC assessment for less than a full range of sedentary work on an individual's ability to do other work. See SSR 96-9p, Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, 1996 WL 374185, at *1 (S.S.A. July 2, 1996). This Ruling acknowledges that where a sit/stand option cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. Id. at *7. The Ruling further states that "[i]t may be especially useful in these situations to

12

to perform other jobs in the national economy. Here, the hypothetical posed to the VE did not address the need to alternate sitting and standing and the ALJ's decision does not explain whether Dr. Yang's opinion on this matter was rejected or ignored.

Social Security Ruling 96-8p provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." See SSR 96-8p, Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). In addition, the Third Circuit has stated, "where there is conflicting probative evidence in the record, [there is] a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and [the court] will vacate or remand a case where such an explanation is not provided." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

This court is cognizant of the fact that there is "no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) (not precedential), and that "[a]n ALJ may accept some of a medical source's opinions while rejecting other opinions from the same source." Comiskey v. Astrue, 2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) (citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202-04 (3d Cir. 2008)). However, an ALJ may not "'pick and choose' among the evidence, selecting only that which supports his ultimate conclusions." Middlemas v. Astrue, 2009 WL 578406, at *9 (W.D. Pa. Mar. 5, 2009) (citing Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000) (an ALJ may not simply rely on "the pieces of the examination reports that supported [his] determination," while excluding other evidence)).

---

consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." Id.

Additionally, case law guides that an ALJ "may not reject pertinent or probative evidence without explanation." Johnson, 529 F.3d at 204. The ALJ must provide not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Id. See also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.").

In the case at bar, the ALJ offered no explanation for Dr. Yang's seemingly inconsistent opinion that plaintiff is capable of sitting for one hour at a time, standing for thirty minutes at a time, walking for three blocks at a time, and yet also capable of sitting, standing, and walking up to eight hours each in an eight-hour workday. While defendant offers an explanation for this omission, see Def.'s Br. at 4-6, the ALJ did not. Therefore, the ALJ's RFC analysis is not supported by substantial evidence.

To be sure, the ALJ is not required to incorporate a sit/stand option in plaintiff's RFC assessment if the ALJ determines that such limitation is not warranted under the facts of the case. However, it is unclear whether the ALJ properly considered the opinion evidence in the context of the RFC analysis. If the ALJ excluded the evidence of a sit/stand option from the RFC assessment for some reason, the ALJ failed to provide such a reason and erred in so doing. See Sutherland v. Berryhill, 2018 WL 2187795, at *9 (M.D. Pa. Mar. 6, 2018), Report and Recommendation approved and adopted, 2018 WL 2183359 (M.D. Pa. May 11, 2018) ("The error here lies in not that the ALJ failed to include a sit-stand option in the RFC, but rather in his

failure to explain why he rejected particular limitations found by Dr. Kilkelly, especially in light of the fact that the ALJ seemingly adopted portions of Dr. Kilkelly's opinion into the RFC.").

The court is mindful that this court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). This court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. Monsour Med. Ctr., 806 F.2d at 1190-91. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2012) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); Burns, 312 F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). See also Cortes v. Comm'r of Soc. Sec., 255 F. App'x 646, 653 (3d Cir. 2007) (not precedential) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting S.E.C. v. Chenery Corp., 318 U.S. 80, 87 (1943)); Clinkscales o/b/o T.S. v. Colvin, 232 F. Supp. 3d 725, 735-36 (E.D. Pa. 2017) (same).

Because the ALJ failed to properly evaluate the opinion evidence in the context of the RFC analysis, her analysis is not supported by substantial evidence. Therefore, the case will be remanded for further proceedings. If the ALJ again determines that plaintiff retains the RFC to perform a limited range of light work, she must provide an adequate basis for that determination. Upon remand, the Commissioner may well reach the same conclusion; however, in the absence of sufficient indication that the Commissioner considered all of the evidence in the case and applied the correct legal standards, this court cannot satisfy its obligation to determine whether substantial evidence supports the Commissioner's decision. See Terwilliger

v. Chater, 945 F. Supp. 836, 844 (E.D. Pa. 1996) (remanding case in the absence of sufficient indication that the Commissioner considered all of the evidence).

## V. CONCLUSION

After a careful and thorough review of all of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings are not supported by substantial evidence. Accordingly, plaintiff's Request for Review will be granted.

Furthermore, plaintiff's Motion to Permit Withdrawal of Second Issue Presented will be granted and defendant's Motion to Stay will be denied as moot.

An appropriate Order accompanies this opinion.

BY THE COURT:

_/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge